Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Individual and Representative Plaintiff*
*KARAN PANJABI*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARAN PANJABI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AEROHIVE NETWORKS, INC., DAVID K. FLYNN, and JOHN RITCHIE,<br><br>Defendants. | Case No. 18-cv-00656<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAW**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Karan Panjabi ("Plaintiff") alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Aerohive Networks, Inc. ("Aerohive" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on beha1f of all investors who purchased or otherwise acquired Aerohive common stock between November 1, 2017, and January 16, 2018, inclusive (the "Class Period").

2.	This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

**JURISDICTION AND VENUE**

3.	The federal law claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

4.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

5.	This Court has jurisdiction over each Defendant named herein because each Defendant either conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

6.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District.

**PARTIES**

7.	Plaintiff Karan Panjabi purchased Aerohive common stock as set forth herein and in her certification filed herewith.

8.	Aerohive is a Delaware corporation with its principal executive offices located at 1011 McCarthy Boulevard, Milpitas, California 95035.  Aerohive trades on the New York Stock Exchange ("NYSE") under the ticker symbol "HIVE."

9.	Defendant David K. Flynn ("Flynn") was the President, Chairman of the Board of Directors, and Chief Executive Officer ("CEO") of the Company at all relevant times.

10.	Defendant John Ritchie ("Ritchie") was the Chief Financial Officer ("CFO"), Senior Vice President, and Chief Operating Officer ("COO") of the Company at all relevant times.

11.	Defendants Flynn and Ritchie are collectively referred to herein as the "Individual Defendants."

12. Aerohive and the Individual Defendants are collectively referred to as the "Defendants."

## CONTROL PERSON ALLEGATIONS

13. By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Aerohive's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

**Background**

14. Aerohive provides cloud networking and enterprise Wi-Fi solutions for its customers to use the power of Wi-Fi, cloud, analytics, and applications to transform how they serve their customers. The Company's products include Wi-Fi access points, routers, and switches required to build an edge-access network; a cloud services platform for centralized management in a wide range of customer environments; and data collection, analytics, and applications that leverage the network to provide additional capabilities to the business and IT organization.

**Material Misrepresentations and Omissions**

15. The Class Period begins on November 1, 2017 when, after the market close, Aerohive issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating result for the fiscal third quarter ended September 30, 2017 ("Q3 2017 Press Release"). For the quarter, the Company reported revenues of $37.1 million, compared to revenues of $40.4 million in the previous fiscal year's comparable quarter. The Q3 2017

Press Release stated in relevant part:

> **MILPITAS, CA — November 1, 2017 —** Aerohive Networks® (NYSE: HIVE), a Cloud Networking Leader, today announced financial results for its third quarter ended September 30, 2017.
>
> "Our third quarter was highlighted by margin performance and EPS at the high end of our guidance ranges, along with strong increases in cash and short-term investments," stated David Flynn, President and Chief Executive Officer. "We're also pleased with the continued progress we have made on our product roadmap and that Dell EMC had the confidence in us to invest in moving to a full OEM relationship, which we announced today."
>
> **Financial Summary**
>
> Total revenue for the third quarter of fiscal year 2017 was $37.1 million, compared with $40.4 million for the third quarter of 2016. Subscription and support revenue was $10.3 million, or 28% of total revenue for the quarter, compared with $8.7 million, or 21% of total revenue, for the third quarter of 2016.
>
> On a GAAP basis, net loss was $6.6 million for the third quarter of fiscal year 2017, compared with a net loss of $9.7 million for the third quarter of 2016. GAAP gross margin was 65.9% for the third quarter of fiscal year 2017, compared with 67.4% for the third quarter of 2016.
>
> On a non-GAAP basis, net loss was $1.6 million for the third quarter of fiscal year 2017, compared with a net loss of $3.3 million for the third quarter of 2016. Non-GAAP gross margin was 66.8% for the third quarter of fiscal year 2017, compared with 68.5% for the third quarter of 2016.

16.     The same day, during a conference call to discuss the Company's financial and operating results for the fiscal third quarter ended September 30, 2017 ("Q3 2017 Conf. Call"), Aerohive's CEO, Defendant Flynn stated in relevant part:

> So when we launched this initiative in Q1, he augmented his team with channel centric sales leaders who built much of Ruckus' channel as well as new leadership in APAC. ***With this new program and team, we recruited 600 new resellers in the first half of the year and added 300 more in Q3***. In Q3, we moved fully to a two-tier model by transitioning our direct VAR business through SYNNEX and we signed Wave as a distributor to help us develop the MSP and HSP channels.
>
> ***Now with this team in place and the program on the right trajectory, Tom has decided to move on to pursue opportunities that better align with his prefer to go-to-market model. Having successfully restructured my leadership team under a COO organization paired with a unified products and marketing organization, I now have the capacity to take on global sales leadership to drive this critical initiative working directly with our three fleet of sales leaders***. I would like to wish Tom well and thank him for his many contributions to Aerohive over last two-and-half years, which has positioned us very well for the future.

Emphasis added.

17. During the Q3 2017 Conf. Call, Aerohive's CFO, Defendant Ritchie stated in relevant part:

> So now moving on to our guidance for the fourth quarter of 2017. As we explained earlier, the transition to our Connect to Select strategy results in the business taking on more SaaS-like characteristics with a shift to more deferred revenue, which impacts our topline. ***We are currently expecting Q4 revenue in the range of $40 million to $42 million.***

Emphasis added.

18. The statements in paragraphs 21-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Aerohive was experiencing sales execution issues following the change in its sales leadership; (2) consequently, Aerohive had overstated its guidance for the fourth fiscal quarter ended December 31, 2017; and (3) as a result of the foregoing, Defendants' statements about its business and operations were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

19. On January 16, 2018, Aerohive issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's financial and operating result for the fiscal fourth quarter ended December 31, 2017 ("Q4 2017 Press Release"). For the quarter, the Company announced expected net revenue to be approximately $37 million, below the previously stated guidance of $40 million to $42 million. The Q4 2017 Press Release stated in relevant part:

> MILPITAS, CA — January 16, 2018 — Aerohive Networks™ (NYSE: HIVE) today announced preliminary results for the fourth quarter ended December 31, 2017.
>
> • Aerohive® expects net revenue for the fourth quarter to be approximately $37 million, which is below the Company's previously stated guidance of $40 million to $42 million.
>
> • The Company expects non-GAAP gross margin to be between 67.5 percent and 68.5 percent, above the Company's previously stated guidance of 66 percent to 67 percent. The Company expects gross margin to be between 67 percent and 68 percent on a GAAP basis.
>
> • On a non-GAAP basis, the Company expects to report positive

operating margin and a modest non–GAAP operating profit, towards the high end of the Company's previously stated guidance. On a GAAP basis, the Company expects net loss to be in the range of $3 million to $4 million, primarily related to stock-based compensation expense of $3 million to $4 million.

• Aerohive increased its cash, cash equivalents and short-term investments by $12 million for the fiscal year and $3 million for the fourth quarter of 2017, excluding the impact in those periods of its share repurchase program.

As of the end of the fourth quarter of 2017, the Company's cash, cash equivalents and short-term investments totaled $85 million.

"We delivered non-GAAP operating profitability in our fourth quarter, but were disappointed that our revenue was below our prior guidance," stated David Flynn, President and Chief Executive Officer. *"Following the change in our sales leadership at the end of our third quarter, we uncovered underlying sales execution issues which became fully apparent in the last month of the fourth quarter. We have taken actions to replace underperforming sales team members, and we believe that the new people we have been putting in place, combined with other actions, will enable us to capitalize on our improved product offering and exciting roadmap in 2018."*

Emphasis added.

20. On the release of the news, the stock price declined from a close of $5.70 per share of Aerohive common stock on January 16, 2018, to a close of $4.07 per share on January 17, 2018, *a drop of approximately 28.6%.*

## LOSS CAUSATION AND ECONOMIC LOSS

21. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Aerohive's misconduct and its lack of operational and financial controls was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Aerohive's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The

economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

22. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Aerohive's business, operations, and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Aerohive's common stock to be artificially inflated. Plaintiff and other Class members purchased Aerohive's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

### SCIENTER ALLEGATIONS IN SUPPORT OF EXCHANGE ACT VIOLATIONS

23. Collectively, the following factual allegations strongly support an inference of scienter on the part of Defendants. Further, Defendants' actions, intentions, and deliberate reckless conduct are imputed to the Company as a matter of law. Because of their key roles in the Company, the Individual Defendants caused Aerohive to act in the manner it did and perpetuate the material misrepresentations and omissions it made throughout the Class Period. Defendants acted with the requisite intent to establish liability under the Exchange Act. Their conduct with respect to Aerohive's statements was intentionally misleading and/or reckless with regard to the risk of investors being misled.

24. For the reasons stated above, the factual allegations strongly support an inference of scienter on the part of Defendants.

### PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

25. At all relevant times, the market for Aerohive common stock was an efficient market for the following reasons, among others:

a) Aerohive common stock met the requirements for listing, and were listed and

        actively traded on the NYSE, a highly efficient market;

    b) During the Class Period, Aerohive common stock was actively traded, demonstrating a strong presumption of an efficient market;

    c) As a regulated issuer, Aerohive filed with the SEC periodic public reports during the Class Period;

    d) Aerohive regularly communicated with public investors via established market communication mechanisms;

    e) Aerohive was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace; and

    f) Unexpected material news about Aerohive was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

26. As a result of the foregoing, the market for Aerohive common stock promptly digested current information regarding Aerohive from all publicly available sources and reflected such information in Aerohive's stock price.  Under these circumstances, all purchasers of Aerohive common stock during the Class Period suffered similar injury through their purchase of Aerohive's common stock at artificially inflated prices, and a presumption of reliance applies.

27. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to a ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld are material because an investor would have considered the Company's actual net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Aerohive.

**NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE**

28. The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

29. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and no meaningful cautionary statements were identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

30. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Aerohive who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Aerohive common stock on the public market during the Class Period, and were damaged, excluding the Company, the Defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest (the "Class").

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aerohive common stock was actively traded on the New York Stock Exchange. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Aerohive or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of November 1, 2017, Aerohive had 53,598,569 outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

34. Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a) whether the federal securities laws were violated by Defendants' respective acts as alleged herein;
   b) whether Defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;
   c) whether the price of Aerohive common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and
   d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

# COUNT I

## Violation of Section 10(b) and Rule 10b-5 Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Aerohive common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

39. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Aerohive common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

40. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Aerohive as specified herein.

41. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Aerohive's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Aerohive and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and

engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Aerohive common stock during the Class Period.

42. The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

43. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Aerohive's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

44. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Aerohive's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Aerohive's publicly-traded common stock was artificially inflated, and relying directly or indirectly

on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Aerohive's common stock during the Class Period at artificially high prices and were or will be damaged thereby.

45. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Aerohive's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Aerohive common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

46. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

48. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of the Company's common stock giving rise to the cause of action.

## COUNT II

**Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Aerohive within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the

power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

51. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

52. As set forth above, Aerohive and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

53. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

54. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of the Company's common stock giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23, and Plaintiff's counsel as class counsel;

b) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

1 | action, including counsel fees and expert fees;

2 |     d)    Granting extraordinary equitable and/or injunctive relief as permitted by law; and

3 |     e)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: January 30, 2018

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Individual and Representative Plaintiff*
*KARAN PANJABI*

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Karan Panjabi, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Aerohive Networks, Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this January 29, 2018.

Name: Karan Panjabi

Signed:

**Karan Panjabi**
**Transactions in Aerohive Networks, Inc. (HIVE) Common Stock**
**Class Period: November 1, 2017 through January 16, 2018, inclusive**

| Date of Transaction | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|
| 12/27/2017 | B | 25 | $ 5.91 |